Steven W. Ritcheson, (SBN 174062)
    swritcheson@hgdlawfirm.com
**HENINGER GARRISON DAVIS, LLC**
9800 D Topanga Canyon Blvd. #347
Chatsworth, California 91311
Telephone: (818) 882-1030
Facsimile: (818) 337-0383

Jonathan R. Miller, *pro hac vice*
    jmiller@hgdlawfirm.com
**HENINGER GARRISON DAVIS, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0863
Facsimile: (205) 547-5506

Attorneys for Plaintiff, *Joao Bock Transaction Systems, LLC*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JOAO BOCK TRANSACTION SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>    Defendants, | Case. No. 5:13-cv-00693-LHK<br><br>**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF** |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................... 1

    A. THE '003 PATENT AND ITS FILE HISTORY ........................................... 1

II. CLAIM CONSTRUCTION LAW ...................................................................... 2

III. ARGUMENT ...................................................................................................... 4

    A. "TRANSACTION SECURITY APPARATUS" ................................................. 4

    B. "TRANSACTION" ....................................................................................... 6

    C. "LIMITATION OR RESTRICTION" .............................................................. 7

    D. "PROCESSING DEVICE" ............................................................................ 8

    E. "PROCESSING, PROCESSES" ..................................................................... 9

    F. "A PROCESSING DEVICE, WHEREIN THE PROCESSING DEVICE PROCESSES AN AUTHORIZATION REQUEST FOR A TRANSACTION ON THE ACCOUNT, WHEREIN THE PROCESSING DEVICE UTILIZES THE LIMITATION OR RESTRICTION AUTOMATICALLY STORED IN THE MEMORY DEVICE IN PROCESSING THE AUTHORIZATION REQUEST, AND FURTHER WHEREIN THE PROCESSING DEVICE GENERATES A SIGNAL CONTAINING INFORMATION FOR AUTHORIZING OR DISALLOWING THE TRANSACTION" AND "A PROCESSING DEVICE WHEREIN THE PROCESSING DEVICE PROCESSES THE TRANSACTION INFORMATION AND GENERATES A SIGNAL CORRESPONDING TO THE TRANSACTION" ...... 10

    G. "TRANSMITTER" ..................................................................................... 13

    H. "A TRANSMITTER, WHEREIN THE TRANSMITTER TRANSMITS THE SIGNAL FROM THE APPARATUS TO A COMMUNICATION DEVICE ON OR OVER AT LEAST ONE OF THE INTERNET AND THE WORLD WIDE WEB INDEPENDENTLY OF ANY PROCESSING OF THE TRANSACTION BY A CENTRAL TRANSACTION PROCESSING COMPUTER, WHEREIN THE COMMUNICATION DEVICE IS ASSOCIATED WITH AN INDIVIDUAL ACCOUNT HOLDER, AND FURTHER WHEREIN THE COMMUNICATION DEVICE PROVIDES INFORMATION TO THE INDIVIDUAL ACCOUNT HOLDER REGARDING THE TRANSACTION, WHEREIN THE COMMUNICATION DEVICE IS AT LEAST ONE OF A BEEPER, A PAGER, A TELEPHONE, A TWO-WAY PAGER, A REPLY PAGER, A HOME COMPUTER, A PERSONAL COMPUTER, A PERSONAL COMMUNICATION DEVICE, A PERSONAL COMMUNICATION SERVICES DEVICE, A TELEVISION, AN INTERACTIVE TELEVISION, A DIGITAL TELEVISION, A PERSONAL DIGITAL ASSISTANT, A DISPLAY TELEPHONE, A VIDEO TELEPHONE, A WATCH, A CELLULAR TELEPHONE, A WIRELESS TELEPHONE, A MOBILE TELEPHONE, A DISPLAY CELLULAR TELEPHONE, AND A FACSIMILE MACHINE" ........................................................ 14

    I. "SIGNAL" ............................................................................................... 17

    J. "AUTHORIZATION REQUEST" .................................................................. 18

    K. "WIRELESS DEVICE" .............................................................................. 19

IV. CONCLUSION .................................................................................................. 21

1

# <u>TABLE OF AUTHORITIES</u>

2
*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.,*
    73 F.3d 1573 (Fed. Cir. 1996)………………………………………………...........4
3

*Biomedino, LLC v. Waters Technology Corp.,*
4
    490 F.3d 946, 83 USPQ2d 1118 (Fed. Cir. 2007)…………………….…………….4

5
*Chimie v. PPG Indus., Inc.,*
    402 F.3d 1371 (Fed. Cir. 2005)……………………………………….……………3
6

*Comark Communications, Inc. v. Harris Corp.,*
7
    156 F.3d 1182, 1186, 48 USPQ2d 1001, 1004 (Fed. Cir. 1998)…………………………20

8
*CCS Fitness, Inc. v. Brunswick Corp.,*
    288 F.3d 1359 (Fed. Cir. 2002)……………………………………….........…passim
9

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
10
    93 F.3d 1572 (Fed. Cir. 1996)…………………………………………………...4

11
*Gart v. Logitech,* Inc.,
    254 F.3d 1334 (Fed. Cir. 2001)……………………………………………………3
12

*General American Transportation Corp. v. Cryo-Trans, Inc.,*
13
    93 F.3d 766 (Fed. Cir. 1996)……………………………………………………........3

14
*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
    78 F.3d 1575 (Fed. Cir. 1996)…………………………………………………........2
15

*In re Donaldson Co.,*
16
    16 F.3d 1189, 29 USPQ2d 1845 (Fed. Cir. 1994) (*en banc*)………………………………4

17
*Intellicall, Inc. v. Phonometrics, Inc.,*
    952 F.2d 1384 (Fed. Cir. 1992)……………………………………………………2
18

*Interactive Gift Express v. Compuserve, Inc.,*
19
    256 F.3d 1323 (Fed. Cir. 2001)……………………………………………...…20

20
*Laitram Corp. v. NEC Corp.,*
    163 F.3d 1342 (Fed. Cir. 1998)……………………………………………………2
21

*Markman v. Westview Instruments, Inc.,*
22
    52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996)…………………..2,3

23
*McCarty v. Lehigh Val R. Co.,*
    160 U.S. 110 (1895)………………………………………………………..……4
24

*Phillips v. AWH Corp.,*
25
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)…………………………………………..passim

26
*SRI International v. Matsushita Electric Corp.,*
    775 F.2d 1107 (Fed. Cir. 1985) (en banc)…………………………………………….2,4
27

*Southwall Tech.. Inc. v. Cardinal IG Co..*
28
    54 F.3d 1570, 34 USPQ2d 1673 (Fed.Cir.1995)………………………….................2,3

*Teleflex, Inc. v. Ficosa North America Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)……………………………………………………………4

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011)……………………………………………………………2

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)……………………………………………………………2,3

.

## I.     INTRODUCTION

Plaintiff, Joao Bock Transaction Systems, LLC, ("Plaintiff" or "JBTS") by and through undersigned counsel, pursuant to Patent L.R. 4-5(a), provides its Opening Claim Construction Brief with respect to certain terms of the asserted claim 127[1], and claims 343 and 345[2] of Plaintiff's United States Patent No. 7,096,003 ("'003 Patent" or "Patent-in-Suit"), entitled "*Transaction Security Apparatus*."

### A.     The '003 Patent and Its File History

The '003 Patent issued on August 22, 2006, after almost five years of examination before the U.S. Patent and Trademark Office. The '003 Patent Application No. 09/949,694 was filed on September 10, 2001, which is a continuation of Application No. 09/169,053, filed October 9, 1998 and later issued as U.S. Patent No. 6,529,725, which is a continuation of Application No. 08/873,945, filed on June 12, 1997 and later issued as Patent No. 5,878,337, which is a continuation of Application No. 08/694,199, filed on August 8, 1996, and is now abandoned. The named inventors are Raymond Anthony Joao and Robert Richard Bock, and the patent is assigned to Joao Bock Transaction Systems, LLC.

The invention claimed in the '003 Patent relates to systems for transaction security in an Internet environment. Independent asserted claim 102 of the '003 Patent accomplishes this task by disclosing components which (A) allow limitations or restrictions on use of an account to be stored on a memory device; and (B) processing via a processing device. Independent asserted claim 317 of the '003 Patent accomplishes this task by disclosing components which (A) allow transaction information to be entered into an input or data entry device; and (B) processing via a processing device; and (C) transmitting to a communication device.

During the prosecution of the '003 Patent the patentees submitted two amendments that contained specific definitions for many, if not all, key claim terms of the patent. Many of those terms are discussed below. The patentees believed it necessary to present these definitions through amendment to ensure a full and complete understanding by the PTO and by the public as

---

[1] Which depends from claim 102.
[2] Which depend from claim 317.

1  to the patentees' understanding and meaning of the terms, so that the invention could be properly

2  and fully understood as to the scope of the claims and what they covered. (*See* Exhibits A and B:

3  the Preliminary Amendment of Sept. 12, 2005 and the October 16, 2004 Amendment,

4  respectively). Because the inventors have chosen to be their own lexicographer, the court should

5  construe the disputed terms in accordance with these definitions.[3]

6  **II.    CLAIM CONSTRUCTION LAW**

7           Patent claim construction is a question of law for the Court. *Markman v. Westview*

8  *Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 391 (1996).

9  The claims of a patent define the "metes and bounds" of the invention. *Phillips v. AWH Corp.*,

10  415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); see also *Laitram Corp. v. NEC Corp.*, 163 F.3d

11  1342, 1347 (Fed. Cir. 1998). The proper construction of a given claim requires the consideration

12  of several factors, including the claim language itself, the patent's specification, other claims of

13  the patent, the prior art, and the prosecution history of the patent. *Markman,* 52 F.3d at 979-81;

14  *SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc).

15  "Ultimately, the interpretation to be given a term can only be determined and confirmed with a

16  full understanding of what the inventors actually invented and intended to envelop with the

17  claim." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d at 1382.

18           The terms used in a claim "are given their ordinary meaning to one of skill in the art

19  unless it appears from the patent and file history that the terms were used differently by the

20  inventors." *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387 (Fed. Cir. 1992); *see also*

21  *Southwall*, 54 F.3d at 1578. "[A] patentee may choose to be his own lexicographer" and assign

22  special definitions to the words in the claim, as long as those definitions are clearly stated in the

23  patent specification or file history. *Vitronics Corp.*, 90 F.3d at 1582 (citing *Hoechst Celanese*

24  *Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1578 (Fed. Cir. 1996)). Therefore, "it is always necessary

25  to review the specification to determine whether the inventor has used any terms in a manner

26  inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly

27

28  _____
[3] The Expert Report of Alex Cheng On Behalf of Plaintiff Joao Bock Transaction Systems, LLC (hereinafter, "Cheng Decl."), in support of Plaintiff's position, is attached hereto as Exhibit C.

defines terms used in the claims or when it defines terms by implication." *Id*. (citing *Markman*, 52 F.3d at 979). The Federal Circuit has stated that "claims must he read in view of the specification, of which they are a part." *Id*. (citing *Markman*, 52 F.3d at 979); see also *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1341 (Fed. Cir. 2001) ("it is certainly correct that the specification and the prosecution history should be consulted to construe the language of the claims."). Because the specification must contain a description sufficient to enable those of ordinary skill in the art to make and use the invention, the specification "is the single best guide to the meaning of a disputed claim term." *Id*.

The prosecution history of the patent, sometimes called the "file wrapper" or "file history," is also important to a proper claim construction. As a complete record of proceedings before the Patent and Trademark Office, it may contain representations made by the applicant regarding the scope of the claims. *Vitronics*, 90 F.3d at 1582. "The patentee is bound by representations made and actions that were taken in order to obtain the patent." *Phillips,* 415 F.3d at 1317 (quoting *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005)). The file history limits the meaning of claim terms "so as to exclude any interpretation that was disclaimed during prosecution." *Southwall*, 54 F.3d at 1576. Prior art, some of which may be contained in the file history, is also important because a valid claim cannot read on, or cover within its scope, what is disclosed in the prior art. *See General American Transportation Corp. v. Cryo-Trans, Inc.,* 93 F.3d 766, 771 (Fed. Cir. 1996).

If no ambiguity is found in the meaning of the terms of a claim after review of the specification and prosecution history, the inquiry is at an end.  If uncertainty remains, extrinsic evidence (e.g., expert and inventor testimony), may be considered. *Vitronics*, 90 F.3d at 1583. However, reliance on such evidence is unnecessary, and improper, when the terms may be understood from the public record. *Phillips*, 415 F.3d at 1317 (extrinsic evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language").

If a court finds a term ambiguous after considering intrinsic and extrinsic evidence, the ambiguity is resolved by adopting the definition of the term that results in the narrower scope of

the claim. This result is compelled by 35 U.S.C. § 112, ¶ 2, which requires that an applicant distinctly claim that which he regards as his invention. *Ethicon*, 93 F.3d at 1581 (noting that a claim can be properly construed only as broadly as its unambiguous scope); *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.* 73 F.3d 1573, 1581 (Fed. Cir. 1996).

Further, with respect to a means plus function claim under 35 U.S.C. § 112(f), where a claim uses the word "means", it creates a rebuttable presumption that the claim element is to be treated pursuant to 35 U.S.C. § 112(f). The absence of the word "means" in a claim creates a rebuttable presumption that the claim element is not to be treated pursuant to 35 U.S.C. § 112(f). That presumption (against application of § 112(f)) is rebutted where the claim element recites function but fails to recite sufficient definite structure or material to perform that function. *See CCS Fitness Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002). A rejection under 35 U.S.C. § 112, second paragraph, is appropriate if there is no disclosure (or insufficient disclosure) of structure, material, or acts for performing the claimed function. *See In re Donaldson Co.*, 16 F.3d 1189, 1195, 29 USPQ2d 1845, 1850 (Fed. Cir. 1994) (*en banc*); and *Biomedino, LLC v. Waters Technology Corp.*, 490 F.3d 946, 952, 83 USPQ2d 1118, 1123 (Fed. Cir. 2007).

These principles of claim construction are long standing and unassailable. Indeed, as the United States Supreme Court held over 100 years ago in *McCarty v. Lehigh Val R. Co.*, 160 U.S. 110, 116 (1895), "Specifications teach. Claims claim. That a specification describes only one embodiment does not require that each claim be limited to that one embodiment." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002); *SRI Int'l*, 775 F.2d at 1121, n. 14. The law does not require applicant to describe in his specification every conceivable and possible future embodiment of his invention. *SRI Int'l*, 775 F.2d at 1121.

## III.   ARGUMENT

### a.   "Transaction Security Apparatus"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| means "an apparatus which provides information regarding a transaction, or an apparatus which determines whether or not a transaction is authorized, allowed, or approved, or an apparatus which determines | Preamble is not limiting. |

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| whether or not a transaction is not authorized, not allowed, or not approved, or an apparatus which provides protection or safety regarding a transaction." | |

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes.

Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment p. 171 (and the File History of the '003 Patent). By defining this term in the prosecution history, the '003 Patent inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed term..."). Furthermore, the definition is included in a section entitled "Definitions" that begins on page 146 of the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the inventors defined the disputed term as shown below:

"Transaction security apparatus" means "an apparatus which provides information regarding a transaction, or an apparatus which determines whether or not a transaction is authorized, allowed, or approved, or an apparatus which determines whether or not a transaction is not authorized, not allowed, or not approved, or an apparatus which provides protection or safety regarding a transaction."
Sept. 12, 2005 Preliminary Amendment at 171.

In contrast, Charles Schwab's proposed construction (i.e. that the term is not a limitation even though the patentees made it a limitation) ignores the intrinsic evidence (prosecution history) where the definition of the disputed term can be found. Since the intrinsic evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

Accordingly, the Court should adopt Plaintiff's construction which comes straight from the inventors.

b.  **"Transaction"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| means "an act, an activity, an action, or a process, or an act, an activity, an action, or a process, which is being carried out or performed or which has been carried out or performed." | "An activity affecting an account, such as a deposit of funds or a withdrawal" |

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes.

Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment p. 172 (and the File History of the '003 Patent). By defining this term in the prosecution history, the '003 Patent inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed term..."). Moreover, the definition is included in a section titled "Definitions" that begins on page 146 of the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the inventors defined the disputed term as shown below:

> "Transaction" means "an act, an activity, an action, or a process, or an act, an activity, an action, or a process, which is being carried out or performed or which has been carried out or performed."
> Sept. 12, 2005 Preliminary Amendment at 172.

In contrast, Charles Schwab's proposed construction ignores the intrinsic evidence (prosecution history) where the definition of the disputed term can be found. Since the intrinsic evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

Charles Schwab also wishes to inject into the disputed term the added limitation of an "account," ignoring longstanding precedent from the Federal Circuit prohibiting this practice. *See*

1   *Phillips*, 415 F.3d at 1323 (A court should "avoid the danger of reading limitations from the

2   specification into the claim"). There is entirely no support in the '003 Patent for the *requirement*

3   that a transaction be limited to performance on an account. Without support, Schwab should not

4   be permitted to impose such a limitation on the term when the limitation is not inherent in the

5   term itself.

6          Accordingly, the Court should adopt Plaintiff's construction which comes straight from

7   the inventors.

8          c.   **"Limitation or Restriction"**

| Plaintiff's<br>Proposed Construction | Defendant's<br>Proposed Construction |
|---|---|
| means "something that limits or restricts, or something that restrains, or something that bounds or restrains or confines within bounds, or a restraining or confining or bounding rule or condition, or a restraint" | no construction necessary |

13         Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003

14  Patent) and the '003 Patent, the term should be defined as JBTS proposes.

15         Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment p.157 and

16  p.166 (and the File History of the '003 Patent). By defining this term in the prosecution history,

17  the '003 Patent inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v.*

18  *Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its

19  ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition

20  of the disputed term..."). Moreover, the definitions are included in a section titled "Definitions"

21  that begins on page 146 of the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the

22  inventors defined the disputed term as shown below:

23         "Limitation" means "something that limits or restricts, or something that restrains,
           or something that bounds or restrains or confines within bounds, or a restraining
24         or confining or bounding rule or condition, or a restraint."
           Sept. 12, 2005 Preliminary Amendment at 157.
25
           "Restriction" means "something that restricts or limits, or something that
26         restrains, or something that bounds or restrains or confines within bounds, or a
           restraining or confining or bounding rule or condition, or a restraint."
27         Sept. 12, 2005 Preliminary Amendment at 166.

28

1    In contrast, Charles Schwab's proposed construction ignores the intrinsic evidence

2  (prosecution history) where the definition of the disputed term can be found. Since the intrinsic

3  evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to

4  extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to

5  the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in

6  a reliable interpretation of patent claim scope unless considered in the context of the intrinsic

7  evidence").

8    Accordingly, the Court should adopt Plaintiff's construction which comes straight from

9  the inventors.

10    d.  **"Processing Device"**

| Plaintiff's<br>Proposed Construction | Defendant's<br>Proposed Construction |
| --- | --- |
| means "a device which performs an operation, an action, or a function, on, with, or regarding, data or information, or a device which performs a number of operations, actions, or functions, on, with, or regarding, data or information, or a device which performs an operation, an action, or a function, or a device which performs a number of operations, actions, or functions." | No construction necessary apart from that identified with respect to claim term no. 5, *infra* ("processing device…") |

17    Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003

18  Patent) and the '003 Patent, the term should be defined as JBTS proposes.

19    Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment p.159 (and the

20  File History of the '003 Patent). By defining this term in the prosecution history, the '003 Patent

21  inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*,

22  288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the

23  patentee acted as his own lexicographer and clearly set forth a definition of the disputed term...").

24  Furthermore, the definition is included in a section titled "Definitions" that begins on page 146 of

25  the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the inventors defined the

26  disputed term as shown below:

27    "Processing device" means "a device which performs an operation, an action, or a
   function, on, with, or regarding, data or information, or a device which performs

28    a number of operations, actions, or functions, on, with, or regarding, data or

information, or a device which performs an operation, an action, or a function, or a device which performs a number of operations, actions, or functions."
Sept. 12, 2005 Preliminary Amendment at 159.

In contrast, Charles Schwab's proposed construction ignores the intrinsic evidence (prosecution history) where the definition of the disputed term can be found. Since the intrinsic evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

Accordingly, the Court should adopt Plaintiff's construction which comes straight from the inventors.

e. **"Processing, processes"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| means "performs an operation, an action, or a function, on, with, or regarding, data or information, or performs a number of operations, actions, or functions, on, with, or regarding, data or information, or performs an operation, an action, or a function, or performs a number of operations, actions, or functions." | No construction necessary apart from that identified with respect to claim term no. 5, *infra* ("processing device…") |

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes.

Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment, p.161-162 (and the File History of the '003 Patent). By defining this term in the prosecution history, the '003 Patent inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed term..."). Moreover, the definitions are included in a section titled "Definitions" that begins on page 146 of the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the inventors defined the disputed term as shown below:

"Processes" means "performs an operation, an action, or a function, on, with, or regarding, data or information, or performs a number of operations, actions, or functions, on, with, or regarding, data or information, or performs an operation, an action, or a function, or performs a number of operations, actions, or functions." Sept. 12, 2005 Preliminary Amendment at 161.

"Processing" means "performing an operation, an action, or a function, on, with, or regarding, data or information, or performing a number of operations, actions, or functions, on, with, or regarding, data or information, or performing an operation, an action, or a function, or performing a number of operations, actions, or functions." Sept. 12, 2005 Preliminary Amendment at 162.

In contrast, Charles Schwab's proposed construction ignores the intrinsic evidence (prosecution history) where the definition of the disputed term can be found. Since the intrinsic evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

Accordingly, the Court should adopt Plaintiff's construction which comes straight from the inventors.

   f.   **"a processing device, wherein the processing device processes an authorization request for a transaction on the account, wherein the processing device utilizes the limitation or restriction automatically stored in the memory device in processing the authorization request, and further wherein the processing device generates a signal containing information for authorizing or disallowing the transaction"** and **"a processing device wherein the processing device processes the transaction information and generates a signal corresponding to the transaction"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary (plain language) and in view of the construction of term 4 *supra* at ¶ d.<br><br>But if the Court finds this term requires construction, then it should be construed as it is to be defined in Plaintiff's expert report on claim construction. | These terms are governed by 35 U.S.C. § 112(f).<br><br>Structure: indefinite<br><br>Function (for claims 102/127): "processes an authorization request … utilizes the limitation or restriction automatically stored in the memory device in processing the authorization request and …generates a signal containing information for authorizing or disallowing the transaction"<br><br>Function (for claims 317/343/345): "processes the transaction information and generates a signal corresponding to the transaction" |

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes.

The disputed phrase, while incredibly long, unwieldy and inappropriate for construction, consists of a number of disputed terms that have been defined in the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent):

a. Processing Device

b. Processes

c. Authorization request

d. Transaction

e. Limitation or Restriction

f. Memory Device

g. Signal

For each of the above terms, Plaintiff has provided a precise definition which it draws from the Sept 12, 2005 Preliminary Amendment. Furthermore, there is nothing in the arrangement of these terms in the disputed phrase that, with the terms defined, could not be easily understood by a person of skill in the art at the time of the invention of the '003 Patent. *See* Cheng Decl. at ¶43.

Charles Schwab's proposed construction is inaccurate because adoption of such a definition is contrary to the principle that claims should be construed to sustain validity. With this proposed construction, Defendant attempts to render invalid claims containing the disputed phrase under 35 U.S.C. § 112, second paragraph alleging there is no disclosure (or insufficient disclosure) of structure, material, or acts for performing the claimed function. When alternate constructions that are fully supported by the intrinsic evidence exist, such as here, this approach is inappropriate.

As the word "means" is lacking from the disputed phrase, there is rebuttable presumption that the claim element is not to be treated pursuant to 35 U.S.C. § 112(f). That presumption (against application of § 112(f)) is rebutted where the claim element recites function but fails to recite sufficient definite structure or material to perform that function.

Thus even if the court allows Charles Schwab to propose constructions contrary to sustaining a patent's validity in this manner, Charles Schwab's assertion that the structure "processing device" is indefinite, is unsupported by the intrinsic evidence.

An example of a processing device that is well known to persons of skill in the art is a computer. *See* Cheng Decl. ¶47.

> The present invention, in an alternate embodiment, may be utilized so as to provide authorization, notification and/or security in banking and related financial transactions involving checking accounts, savings accounts and/or automated teller machine (ATM) transactions and/or other transactions wherein an account holder can be notified of a transaction and/or attempted transaction. In such an alternate embodiment, the apparatus comprises a banking transaction terminal, which terminals are found in banks and financial institutions, and which may be a teller terminal, a processing computer terminal and/or an ATM terminal. The apparatus also comprises a central processing computer and a communication device. **The banking transaction terminal transmits an authorization request which may include the data pertaining to the particular account which is accessed and/or involved in the transaction and the type and the amount of the transaction, over a communications medium to the central processing computer for processing the transaction request and/or the authorization pertaining thereto.**
> '003 Patent 8:36-55 (emphasis added)

> Typically, the terminals and devices for providing point of sale authorization comprise and utilize a magnetic card reader and/or magnetic strip card reader, for reading data from the magnetic strip located on credit cards, charge cards, debit cards and/or the currency or "smart" cards. **The point-of-sale terminal 2 transmits an authorization request which may include the data pertaining to the particular card utilized in the transaction and the amount of the transaction, over a communications medium, to a central processing computer for processing the credit, charge, debit and/or other transaction request and/or the authorization request pertaining thereto**.
> '003 Patent 13:21-32 (emphasis added)

Moreover, the Sept. 12, 2005 Preliminary Amendment identifies additional references in the specification to provide support for the definiteness of the term "processing device."

> Support for the above definition can, for example, be found in the originally filed Specification at page 29, line 15 to page 30, line 4; page 30, line 5 to page 31, line 24; page 31, line 25 to page 32, line 4; page 44, line 22 to page 45, line 15; page 45, line 16 to page 46, line 15; page 46, lines 16-31; page 58, line 21 to page 59, line 16; page 59, line 17 to page 60, line 19; page 60, line 20 to page 61, line 2; page 8, lines 6-16; page 9, lines 2-5; page 10, line 20 to page 14, line 18; page 16, lines 28-34; page 26, line 19 to page 27, line 5; page 25, line 25 to page 32, line 10; page 32, line 19 to page 38, line 6; page 40, line 25 to page 47, line 4; page 47, line 14 to page 53, line 12; page 55, line 27 to page 61, line 7; page 61, line 27 to page 64, line 34; page 66, line 31 to page 67, line 33; page 68, line 1 to page 69, line 11; page 68, lines 19-31; and page 76, line 5 to page 77, line 9; and in the

originally filed Drawings in FIGS. 1 and 2 (CENTRAL PROCESSING COMPUTER 3); FIG. 2 (CPU 2A, CPU 3A, CPU 4A); FIGS. 4 and 5 (CENTRAL PROCESSING COMPUTER 103); FIG. 5 (CPU 102A, CPU 103A, CPU 104A); FIGS. 7 and 8 (CENTRAL PROCESSING COMPUTER 203); FIG. 8 (CPU 202A, CPU 203A, CPU 204A) ; and FIG. 10 (SERVER COMPUTER 350) ; FIG. 11 (CENTRAL PROCESSING COMPUTER 403, SERVER COMPUTER); and FIGS. 3, 6 and 9.

Sept. 12, 2005 Preliminary Amendment at 160.

Charles Schwab's proposed construction is improper because it ignores the intrinsic evidence, the '003 Patent and its Specification, that recites definite structure for "processing device."

Accordingly, this exceptionally long term requires no construction.

g. **"Transmitter"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| means "a device for sending a signal, data, information, or a message, from one location or device to another location or device, or a device for the transmission of a signal, data, information, or a message, from one location or device to another location or device, or a device for sending a signal, data, information, or a message, from one place to another place." | No construction necessary apart from that identified with respect to claim term no. 7, *infra* ("transmitter….") |

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes.

Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment p.174 (and the File History of the '003 Patent). By defining this term in the prosecution history, the '003 Patent inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp*., 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed term..."). Moreover, the definition is included in a section titled "Definitions" that begins on page 146 of the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the inventors defined the disputed term as shown below:

"Transmitter" means "a device for sending a signal, data, information, or a message, from one location or device to another location or device, or a device for

the transmission of a signal, data, information, or a message, from one location or device to another location or device, or a device for sending a signal, data, information, or a message, from one place to another place."
Sept. 12, 2005 Preliminary Amendment at 174.

In contrast, Charles Schwab's proposed construction ignores the intrinsic evidence (prosecution history) where the definition of the disputed term can be found. Since the intrinsic evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

Accordingly, the Court should adopt Plaintiff's construction which comes straight from the inventors.

  h. **"a transmitter, wherein the transmitter transmits the signal from the apparatus to a communication device on or over at least one of the Internet and the World Wide Web independently of any processing of the transaction by a central transaction processing computer, wherein the communication device is associated with an individual account holder, and further wherein the communication device provides information to the individual account holder regarding the transaction, wherein the communication device is at least one of a beeper, a pager, a telephone, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device, a television, an interactive television, a digital television, a personal digital assistant, a display telephone, a video telephone, a watch, a cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary (plain language) and in view of the construction of term 6 *supra*.<br><br>But if the Court finds this term requires construction, then it should be construed as it is to be defined in Plaintiff's expert report on claim construction. | This term is governed by 35 U.S.C. § 112(f).<br><br>Structure: indefinite<br><br>Function: "transmits the signal from the apparatus to a communication device on or over at least one of the Internet and the World Wide Web independently of any processing of the transaction by a central transaction processing computer …wherein the communication device is at least one of a beeper, a pager, a telephone, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device, a television, an interactive television, a digital television, a personal digital assistant, a display telephone, a video telephone, a watch, a |

| | cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine" |
|---|---|

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes. The term "wireless device" as used consistently in the claims, should be given its plain and ordinary meaning. No construction is needed for this term because it is clear, and the intrinsic evidence fails to show that the inventors deviated from the plain and ordering meaning of the term.

The disputed phrase, while incredibly long, unwieldy and inappropriate for construction, consists of a number of disputed terms that have been defined in the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the October 16, 2004 Amendment (and the File History of the '003 Patent):

     a. Transmitter

     b. Transmits

     c. Communications Device

     d. At least one of A and B

     e. Transaction

     f. Central transaction processing computer

For each of the above terms in dispute, Plaintiff has provided a precise definition which it draws from either the Sept 12, 2005 Preliminary Amendment or the October 16, 2004 Amendment. Furthermore, there is nothing in the arrangement of these terms in the disputed phrase that, with the terms defined, could not be easily understood by a person of skill in the art at the time of the invention of the '003 Patent. *See* Cheng Decl. at ¶55.

Charles Schwab's proposed construction is improper because adoption of such a definition is contrary to the principle that claims should be construed to sustain validity. With this proposed construction, Defendant attempts to render invalid claims containing the disputed phrase under 35 U.S.C. § 112, second paragraph alleging there is no disclosure (or insufficient disclosure) of structure, material, or acts for performing the claimed function. When alternate constructions that are fully supported by the intrinsic evidence exist, such as here, this approach is inappropriate

As the word "means" is lacking from the disputed phrase, there is rebuttable presumption that the claim element is not to be treated pursuant to 35 U.S.C. § 112(f). That presumption (against application of § 112(f)) is rebutted where the claim element recites function but fails to recite sufficient definite structure or material to perform that function.

Thus even if the court allows Charles Schwab to propose constructions contrary to sustaining a patent's validity in this manner, Defendant's assertion that the structure "transmitter" is indefinite, is unsupported by the intrinsic evidence.

Transmitter is a well-known term of art in the field of financial transaction processing. Moreover, transmitter is a well-known by persons of skill in the art as being a component of a communication device. *See* Cheng Decl. at ¶59.

> The apparatus also comprises a cardholder communication device which may receive signals and/or data from either or both of the point-of-sale terminal and/or the central processing computer. **The communication device may also be equipped with a transmitter for transmitting signals and/or data to the central processing computer.** In this regard, the central processing computer transmits signals and/or data to the communication device as well as receives signals and/or data from the communication device. The communication device may also transmit signals and/or data directly to the point-of-sale terminal and receive signals and/or data directly from the point-of-sale terminal.
> '003 Patent 4:49-60 (Emphasis added)

> **In the preferred embodiment, the communication device 4 is also equipped with a transmitter for transmitting signals and/or data to the central processing computer 3.** In this regard, the central processing computer 3 transmits signals and/or data to the communication device 4 as well as receives signals and/or data from the communication device 4. The communication device 4 may also transmit signals and/or data directly to the point-of-sale terminal 2 and receive signals and/or data directly from the point-of-sale terminal 2. In the preferred embodiment, the point-of-sale terminal 2 transmits signals and/or data to the central processing computer 3 and receives signals and/or data from the central processing computer 3. Further, in the preferred embodiment, the communication device 4 receives signals and/or data from the central processing computer 3 and transmits signals and/or data to the central processing computer 3.
> '003 Patent 14:35-51 (Emphasis added)

Additionally, examples of a communication device is given in the '003 Patent that are well known to include a transmitter.

> a transmitter, wherein the transmitter transmits the signal from the apparatus to a communication device on or over at least one of the Internet and the World Wide Web independently of any processing of the transaction by a central transaction processing computer, wherein the communication device is associated with an individual account holder, and further wherein the communication device

provides information to the individual account holder regarding the transaction, **wherein the communication device is at least one of** a beeper, a pager, **a telephone, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device,** a television**, an interactive television, a digital television, a personal digital assistant, a display telephone, a video telephone,** a watch, **a cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine**.
'003 Patent 74:21-38 (Emphasis added)

Moreover, the Sept. 12, 2005 Preliminary Amendment identifies additional references in the specification to provide support for the definiteness of the term "transmitter."

Support for the above definition can, for example, be found in the originally filed Specification at page 8, line 26 to page 9, line 12; page 11, line 22 to page 14, line 18; page 16, lines 20-34; page 17, line 29 to page 18, line 2; page 18, lines 18-22; page 20, lines 6-15; page 21, lines 5-10; page 25, line 29 to page 26, line 3; page 27, line 16 to page 28, line 16; page 29, lines 25-29; page 30, lines 13-20; page 31, line 33 to page 32, line 4; page 32, lines 30- 32; page 34, line 29 to page 38, line 10; page 40, line 29 to page 41, line 16; page 42, line 21 to page 44, line 2; page 45, lines 1-11; page 45, line 25 to page 46, line 4; page 46, lines 26-31; page 491 line 28 to page 53, line 12; page 55, lines 17-22; page 56, line 23 to page 571 line 32; page 58, line 31 to page 59, line 9; page 59, line 26 to page 60, line 6; page 60, line 30 to page 61, line 7; page 61, line 27 to page 62, line 13; page 62, line 32 to page 64, line 34; page 67, lines 10-19; page 68, line 32 to page 69, line 3 i page 69, line 20 to page 70, line 24; page 72, line 8 to page 73, line 14; page 74, line 21 to page 75, line 20; page 76, line 16 to page 77, line 9; page 78, lines 6-25; and page 82, lines 3-11; and in the originally filed Drawings in FIG. 2 (XMTR 2G, XMTR 3F, XMTR 4H); FIG. 5 (XMTR 102G, XMTR 103F, XMTR 104H); and FIG. 8 (XMTR 202F, XMTR 203F, XMTR 204H).
Sept. 12, 2005 Preliminary Amendment, p.174-175

Charles Schwab's proposed construction is improper because it ignores the intrinsic evidence, the '003 Patent and its Specification, that recites definite structure for "transmitter."

Accordingly, this exceptionally long term requires no construction.

       i.   **"Signal"**

| Plaintiff's<br>Proposed Construction | Defendant's<br>Proposed Construction |
|---|---|
| means "an indication, or an indication having or conveying data, information, or a message, or a conveyor of data, information, or a message, or an electrical, electronic, electromagnetic, optical, digital, visual, audible, or other, indication having or conveying data, information, or a message, or an indication representing data or information." | "a visual, aural or other indication used to convey information." |

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes.

Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment page 167 (and the File History of the '003 Patent). By defining this term in the prosecution history, the '003 Patent inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed term..."). Moreover, the definition is included in a section titled "Definitions" that begins on page 146 of the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the inventors defined the disputed term as shown below:

> "Signal" means "an indication, or an indication having or conveying data, information, or a message, or a conveyor of data, information, or a message, or an electrical, electronic, electromagnetic, optical, digital, visual, audible, or other, indication having or conveying data, information, or a message, or an indication representing data or information."
> Sept. 12, 2005 Preliminary Amendment at 167.

In contrast, Charles Schwab's proposed construction ignores the intrinsic evidence (prosecution history) where the definition of the disputed term can be found. Since the intrinsic evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

Accordingly, the Court should adopt Plaintiff's construction which comes straight from the inventors.

### j.  "Authorization request"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "something, an action, operation, process, or function, taken or performed to determine or to ascertain whether or not a transaction or an activity is allowed or approved, or an asking for an approval or allowance of, for, or regarding, a transaction or an activity, or data | "a query sent to the central processing computer via a communications medium, seeking approval or disapproval of a transaction or activity" |

| | |
|---|---|
| or information used in determining or ascertaining whether or not a transaction or an activity is allowed or approved, or an asking for whether or not a transaction or an activity is allowed or approved." | |

Based on the Sept. 12, 2005 Preliminary Amendment (and the File History of the '003 Patent) and the '003 Patent, the term should be defined as JBTS proposes.

Plaintiff's definition appears in the Sept. 12, 2005 Preliminary Amendment p. 147 (and the File History of the '003 Patent). By defining this term in the prosecution history, the '003 Patent inventors have chosen to be their own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed term..."). Moreover, the definition is included in a section titled "Definitions" that begins on page 146 of the Sept. 12, 2005 Preliminary Amendment. Thus it is clear that the inventors defined the disputed term as shown below:

> "Authorization request" means "something, an action, operation, process, or function, taken or performed to determine or to ascertain whether or not a transaction or an activity is allowed or approved, or an asking for an approval or allowance of, for, or regarding, a transaction or an activity, or data or information used in determining or ascertaining whether or not a transaction or an activity is allowed or approved, or an asking for whether or not a transaction or an activity is allowed or approved."
> Sept. 12, 2005 Preliminary Amendment at 147.

Charles Schwab's proposed construction ignores the intrinsic evidence (prosecution history) where the definition of the disputed term can be found. Since the intrinsic evidence is sufficient to resolve the meaning of the disputed term, it is improper to resort to extrinsic evidence. *Phillips*, 415 F.3d at 1318-1319 (while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

Accordingly, the Court should adopt Plaintiff's construction which comes straight from the inventors.

### k.  "Wireless device"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|

| No construction necessary (plain language).<br><br>But if the Court finds this term requires construction, then it should be construed as it is to be defined in Plaintiff's expert report on claim construction. | "a device that can be wirelessly connected to a communications system." |
|---|---|

The term "wireless device" as used consistently in the claims, should be given its plain and ordinary meaning. No construction is needed for this term because it is clear, and the intrinsic evidence fails to show that the inventors deviated from the plain and ordering meaning of the term. The will court "look 'to the specification to ascertain the meaning of the claim terms as it is used by the inventor in the context of the entirety of his invention,' and not merely to limit a claim term." *Interactive Gift Express v. Compuserve, Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001) (*citing Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186, 48 USPQ2d 1001, 1004 (Fed. Cir. 1998).  Indeed jurors would understand the term to simply be a device that has the capability of functioning wirelessly.

However, Charles Schwab chooses to improperly ignore the plain language of the claim. Its proposed construction is overly restrictive because it introduces the unsupported limitation of a "communications system" into the definition of "wireless device." This limitation would necessarily exclude point-to-point wireless technology or the use of a wireless component somewhere in the communications link.

The '003 Patent specification is replete with examples and references to "wireless device," and none of these references *require* connectivity to a communications system:

> The communication device may be a **wireless device**. In this regard, the communication device may be a telephone signal receiving device which may be a beeper or pager or other device which may be carried by the cardholder and/or be kept on and/or close to the cardholder's person so that the central processing computer may transmit signals and/or data to the communication device so as to communication with the cardholder at any time and at any location.
> '003 Patent 4:66 – 5:6.

> As noted above, the communication device 104 is a **wireless device**. In this regard, the communication device 104 or pager may be carried by the account owner and/or be kept on and/or close to the account owner's person so that the central processing computer 103 may transmit signals and/or data to the communication device 104 so as to communication with the account owner at any time.
> '003 Patent 22:64 – 23:3.

In the above examples, there is no mention of any communication system in connection to a wireless device. *See Phillips*, 415 F.3d at 1323 (A court should "avoid the danger of reading limitations from the specification into the claim"). Therefore, because the '003 patent clearly contemplates modes of communication like wireless point-to-point, Charles Schwab's proposed construction is improper. Charles Schwab may not unduly restrict the definition of this term when its plain meaning is evident in the '003 Patent claims. Accordingly, the Court should rely on the plain meaning of this term.

## IV. CONCLUSION

For the foregoing reasons, JBTS requests that the Court adopt JBTS's constructions proposed in the Joint Claim Construction Chart.

Dated: <u>March 6, 2014</u>          Respectfully submitted,


          _s/ Steven W. Ritcheson_
          Steven W. Ritcheson, (SBN 174062)
          **HENINGER GARRISON DAVIS, LLC**
          9800 D Topanga Canyon Blvd. #347
          Chatsworth, California  91311
          Telephone: (818) 882-1030
          Facsimile: (818) 337-0383
          switcheson@hgdlawfirm.com

          Jonathan R. Miller, *pro hac vice*
          **HENINGER GARRISON DAVIS, LLC**
          3621 Vinings Slope, Suite 4320
          Atlanta, Georgia 30339
          Telephone: (404) 996-0863
          Facsimile: (205) 547-5506
          Email: jmiller@hgdlawfirm.com


          **Attorneys for Plaintiff**
          ***Joao Bock Transaction Systems, LLC***

1

## **CERTIFICATE OF SERVICE**

2          This is to certify that I have this day electronically filed the foregoing using the CM/ECF

3   system.

4

5   Dated: <u>March 6, 2014</u>                    <u>*s/ Steven W. Ritcheson*</u>

6                                                    Steven W. Ritcheson, Esq.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28